IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**LEE A. WESLEY**                                                                                          **PLAINTIFF**

**V.**                          **CASE NO. 5:19-CV-00210-JTK**

**ANDREW SAUL,**
**Commissioner of Social Security Administration[1]**                        **DEFENDANT**

## ORDER

### I.  Introduction:

Plaintiff, Lee A. Wesley ("Wesley"), applied for disability benefits on March 15, 2016, alleging a disability onset date of August 26, 2011. (Tr. at 16). The claim was denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") denied Wesley's application. (Tr. at 25). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Wesley has requested judicial review.

For the reasons stated below, the Court[2] reverses the ALJ's decision and remands for further review.

### II.  The Commissioner's Decision:

Wesley's date last insured for purposes of determining his disability status was December 31, 2015. (Tr. at 17). Therefore, for his disability benefits Title II claim, he must establish disability before that date. *Id.*

The ALJ found that Wesley had not engaged in substantial gainful activity since the alleged

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

onset date of August 26, 2011. (Tr. at 18). The ALJ found, at Step Two of the sequential five-step analysis, that Wesley had the following severe impairments: degenerative disc disease, degenerative joint disease status-post repairs, right shoulder rotator cuff tear and repair, obesity, and chronic pain syndrome. *Id*.

At Step Three, the ALJ determined that Wesley's impairments did not meet or equal a listed impairment. (Tr. at 19). Before proceeding to Step Four, the ALJ determined that, prior to April 26, 2018, Wesley had the residual functional capacity ("RFC") to perform work at the sedentary level, with additional limitations.[3] (Tr. at 14-15). He could not climb ladders, ropes, or scaffolds; he only occasionally climb ramps or stairs and only occasionally balance, stoop, kneel, crouch, or crawl; he could only occasionally perform overhead reaching with the right upper extremity; and he could not operate foot controls or tolerate exposure to unprotected heights in the work place. (Tr. at 19).

The ALJ found that Wesley was unable to perform his past relevant work. (Tr. at 23). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Wesley's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. at 24). Therefore, the ALJ found that Wesley was not disabled prior to April 26, 2018. *Id.*

**III.   Discussion:**

    A.   Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence"

---

[3] The ALJ determined that Wesley was disabled beginning on April 26, 2018. (Tr. at 25).

in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

    B. Wesley's Arguments on Appeal

Wesley contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that the ALJ should have found him disabled before the date last insured of December 31, 2015 and that the ALJ did not give proper weight to the medical opinions. The Court finds support for these arguments.

Wesley suffered from back and hip pain that radiated to his right leg. In various clinical examinations prior to the date last insured, he showed great distress, pain with range of motion exercises, lumbar tenderness, muscle spasms, and disturbed gait. (Tr. at 346, 350-360, 383, 401, 411). He could not heel-toe walk, and straight-leg raises were consistently positive. (Tr. at 360, 407, 477). The consultative examining doctor, Samuel Hester, Ph.D., noted that Wesley was in a lot of pain during the examination on October 17, 2013. (Tr. at 75). Although Dr. Hester's evaluation was for mental impairments, he determined that physical pain kept Wesley from working, and that he may not be able to complete tasks due to pain. (Tr. at 398-401). Wesley told Dr. Hester that activities of daily living took longer to complete and he avoided socializing due to pain. *Id*. Indeed, on the disability function report, Wesley said that his girlfriend helped him with

most of his daily chores and he could only prepare simple meals. (Tr. at 270-277). His girlfriend took care of their dog, helped him with personal care, and did the shopping. *Id.* Wesley no longer did any yard work. *Id*. Limitations on activities of daily living may preclude all work. *See Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005).

Wesley tried a wide range of treatment in the period before his date last insured, which provided no relief. He took numerous narcotic medications and he tried physical therapy in 2011 and 2015, which only increased his pain. (Tr. at 349, 356, 383). His physical therapist said that prognosis for rehab was poor and that he could not even perform simple range of motion exercises involving his back. (Tr. at 696-701). Wesley was discharged from physical therapy in February 2015 because he was not able to complete the treatment regimen. *Id*. Wesley tried conservative treatment like ice, heat, rest, and muscle relaxants. (Tr. at 451-454). This did not help. After seeing an orthopedic specialist and pain management doctor, Wesley proceeded with two rounds of epidural steroidal injections in his back in 2014. (Tr. at 401, 447). This did not help. He then underwent both medial branch blocks and radiofrequency ablation treatment. (Tr. at 576, 647, 688). This did not help. His orthopedic surgeon did not recommend surgery because he did not think it would be beneficial or resolve the pain issues. (Tr. at 410-413). He said Wesley would experience "chronic pain even with surgery." *Id*.

Doctors noted significant pain markers at clinic visits before the date last insured in December 2015. One said Wesley look "pretty miserable and quite symptomatic." (Tr. at 415-418). One said he looked to be in quite a bit of discomfort and could not sit for any length of time. (Tr. at 401-406). One noted pain with sitting and standing and found that Wesley could not heel-toe walk or perform a straight-leg raise test due to pain. (Tr. at 347, 360). One doctor placed work

restrictions on Wesley, including no bending, stooping, or walking, and no lifting of weight over 5 pounds. (Tr. at 365-377). These doctors' observations came from 2011 through 2015, during the period which Wesley claims he was disabled.

Wesley's diagnoses, based on objective imaging and clinical exams, were central disc protrusion, disc bulging, annular tear with radiculitis at L4-S1, degenerative disc disease, lumbosacral radiculopathy, and lumbosacral spondylosis. (Tr. at 384, 410-418, 465-477). He sought out a variety of specialists for pain treatment. He tried any number of treatment protocols, as prescribed by the specialists. Dr. James Cash, M.D., opined in July 2016 that Wesley was incapacitated indefinitely. (Tr. at 1070). He reiterated in 2018 that Wesley could not perform even sedentary work. (Tr. at 1325-1330).

The ALJ gave Dr. Cash's opinions little weight. (Tr. at 22-23). Also, he did not even discuss the opinions that Dr. Hester rendered about Wesley's complex pain. By neglecting to discuss this opinion, from the agency's own examining doctor, the ALJ erred. He also minimized the failed treatment, the limited daily activities, the reports of doctors who witnessed Wesley in pain, and the clinical notes referencing pain, tenderness, muscle spasms, and positive straight-leg raises. This claim deserves further review about whether Wesley was disabled prior to his date last insured. The medical evidence seems to indicate the possibility of such a determination, so remand is the proper course.

## IV.  Conclusion:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The record as a whole suggests that Wesley may have been disabled prior to his date last insured. The decision is hereby reversed and the case remanded with instructions for

further review.

    IT IS SO ORDERED this 27th day of May, 2020.

                                                    _____
                                                    UNITED STATES MAGISTRATE JUDGE